(20 App. Div. 577.)

## TRAIN v. DAVIDSON.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

1. CONTRACT—VALIDITY—PUBLIC POLICY.
   A husband and wife made a contract, by which, to facilitate the marriage of the wife to another man, the husband agreed to aid his wife to procure a divorce, by furnishing her with evidence against himself, and agreed not to defend such suit, and to pay her an annual sum for life; and the wife agreed to procure a decree which should omit any provision for alimony, costs, or counsel fee against the husband. *Held*, that the contract was against public policy, and void.

2. SAME—EVIDENCE.
   The husband and wife also entered into a separate agreement by which it was agreed that he should pay her the annual sum for life in consideration of a release of her dower, and an undertaking to save him harmless from her debts. In an action by the wife, after procuring the divorce, to recover under this latter agreement, *held*, that evidence offered by the husband to show the prior and general agreement, and the consequent procurement of the divorce, and that the contract in suit was executed pursuant thereto, and was part and parcel thereof, was material, and its exclusion was error.

Appeal from trial term, Westchester county.

Action by Mary B. Train against George L. Davidson. From a judgment in favor of plaintiff rendered on a verdict directed by the court, and from an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

47 N.Y.S.—19

Ira Leo Bamberger, for appellant.

Flamen B. Candler, for respondent.

WILLARD BARTLETT, J. The parties to this action were formerly husband and wife. Their marriage was dissolved by a decree of divorce granted at the instance of the wife on the 30th day of November, 1894. By a written contract between them dated on the 9th day of November, 1894, but which does not appear to have been delivered to the wife until some time after the divorce, the husband agreed to pay $2,000 a year to the wife, in semiannual installments of $1,000 each, in consideration of a release of her dower, and an undertaking on her part to save him harmless from any debts of her contracting, for necessaries or otherwise, during her natural life. This contract further authorized and directed one John G. Jenkins, surviving executor of Abby E. Laytin, deceased, to pay over to the plaintiff or her assigns the said sum of $2,000 a year, and to deduct the same from the moneys due and to grow due to the defendant from said estate. The wife, who has married again, brings this action to recover $2,000, which she claims to be due under that agreement. The defendant sets up five defenses, but it is necessary to consider only one of these in order to dispose of the present appeal. In the second separate defense he avers, in substance, that, his wife being desirous of marrying another man, an agreement was made between the parties in 1894 whereby the husband was to facilitate the wife in obtaining a divorce from him, by committing adultery, and by furnishing her with evidence of such adultery, as well as with evidence of adultery previously committed by him, and was not to defend any action brought against him for divorce, and was to agree to pay the wife $2,000 a year for life, by assigning to her for that purpose a sufficient portion of a trust fund to which he was entitled, and whereby the wife undertook to institute such an action for divorce, and procure a decree which should omit any provision for alimony, costs, or counsel fee against the husband. In this defense it is furthermore alleged that the defendant did commit adultery, and did furnish his wife with the evidence of his adultery committed both prior and subsequent to the agreement, whereupon she brought suit against him, which he did not defend, and she obtained her decree accordingly, omitting all provision for alimony, costs, and counsel fee; and the agreement now sued upon is alleged to have been executed pursuant to the earlier and more comprehensive contract for the divorce proceedings. The defendant's position is that the contract in suit, having been entered into in pursuance and as a part of the agreement for the divorce, is illegal and void, the contract as an entirety being contrary to public policy. On the trial the defendant did not undertake to prove this defense quite as fully as it is pleaded. His counsel avowed his readiness to prove everything therein contained, except the averment that the agreement provided that the husband was thereafter to commit adultery. With this modification, however, the contract still remained a contract whereby the husband agreed to help his wife to divorce herself from him by placing in her hands the necessary proof of adultery previously committed, without which, pre-

sumably, she could not succeed.  But the learned trial judge would not allow the defendant to show that his wife entered into any such agreement.  The defendant took the stand as a witness in his own behalf, but was permitted to answer only a single interrogatory out of the scores of questions which were put to him.  The following extract from the record, relating to the direct examination of the defendant, illustrates how the defense under consideration was treated upon the trial:

"Q. Did she (your wife) then say to you, 'I don't want to live with you any longer, and, if you will furnish me with evidence of your past adultery, I will get a divorce; and I will not make any claim for counsel fees, costs, or alimony, provided you do not defend the action, and facilitate me in getting the divorce quickly'? (Objected to by plaintiff as immaterial.  Objection sustained. Defendant excepts.)  Q. And what else did she say, if anything?  (Objected to by plaintiff as immaterial.  Objection sustained.  Defendant excepts.)  Q. Did she say to you at the same time that you could furnish her with evidence of any previous adultery you had committed, and did you then say that you did not want to be put in that position, and did she then say that this would be the best thing for both of you, and the quicker it is done the better it will suit her? (Objected to by plaintiff as immaterial.  Objection sustained.  Defendant excepts.)"

Here the counsel for the defendant was laboriously endeavoring to prove the second separate defense set up in his answer, as modified by the statement, already mentioned, that he would not undertake to show that the agreement contemplated acts of adultery yet to be committed.  Although some of the questions were leading in form, they were plainly thus framed so as to make the purpose of counsel manifest to the court, and they were not objected to on that ground.  The exclusion of the evidence sought by this line of inquiry can only be justified, it seems to me, if we are prepared to hold that the averments of the answer which that evidence would tend to establish do not constitute a defense.

The averments of the second defense, as limited by counsel's statement as to what he would attempt to prove thereunder, amounted to this:  That the contract to pay the plaintiff $2,000 a year, upon which the present suit is brought, was part and parcel of a larger contract made between the parties when they were still husband and wife, whereby, among other things, the husband undertook to furnish the wife with proof of past adultery on his own part, in order that she might divorce the defendant and wed another man, whom she desired to marry.  Whether the defendant could have proved these averments is not the question.  Should he not have been allowed to introduce evidence tending to prove them?  I think he should, and that, if they were established, they would show a contract of such a character as to preclude a court of law from giving any effect to it so far as it remains executory.  Agreements between husband and wife for the purpose of procuring a divorce have often been condemned as contracts against public policy.  Daggett v. Daggett, 5 Paige, 509; Whitney v. Whitney, 4 App. Div. 597, 36 N. Y. Supp. 891, and 39 N. Y. Supp. 1136; Hungerford v. Hungerford, 16 App. Div. 612, 614, 44 N. Y. Supp. 973; Goodwin v. Goodwin, 4 Day, 343; Adams v. Adams, 25 Minn. 72; Cross v. Cross, 58 N. H. 373; Hardy v. Smith, 136 Mass. 328.  The law favors the maintenance of peace and harmony be-

tween husband and wife, and the restoration of their relations when interrupted; so that, while it approves the settlement of matrimonial controversies, it frowns upon agreements for the dissolution of marriage. See Adams v. Adams, 91 N. Y. 381, 384. But the agreement which the defendant attempted to prove was something more than a contract made simply for the purpose of enabling the wife to procure a divorce. It contemplated the divorce merely as a necessary step to the accomplishment of her desire to marry another man. There was not simply a purpose to get rid of a bad husband, but a purpose to procure one whom the wife already deemed better. Such is the fair construction of the language used by the pleader, and it will hardly be contended that the law should enforce a contract of this nature.

For the error of the trial court in refusing to receive the proof offered by the defendant in support of his second separate defense, the judgment should be reversed and a new trial granted, with costs to abide the event. All concur.